

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
11/09/2017

| | | |
|---|---|---|
| IN RE: § | | |
| TRADAX ENERGY, INC. § | CASE NO: 15-33422 | |
|    Debtor(s) § | | |
| § | CHAPTER  7 | |
| § | | |
| ALLISON D BYMAN § | | |
|    Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 16-3284 | |
| § | | |
| WALTER  HUYBREGTS, *et al* § | | |
|    Defendant(s) § | | |

## MEMORANDUM OPINION

Allison D. Byman, as Chapter 7 Trustee for Tradax Energy, Inc. (the "Debtor"), filed this adversary proceeding against Walter Huybregts, Tradax Green Energy, LLC, and The Huybregts Family Trust: to recover damages for anticipatory breaches of multiple contracts; to recover monies fraudulently transferred from the Debtor; to obtain judgments against Huybregts and Tradax Green Energy for actual and constructive fraudulent transfers; to obtain a judgment against Huybregts for a breach of his fiduciary duty of loyalty to the Debtor; to obtain a judgment against Huybregts for unlawful shareholder distributions; to obtain a judgment against Huybregts for unpaid notes receivable owed to the Debtor; and to obtain pre-judgment interest, post-judgment interest, and attorneys' fees and costs.

Huybregts and Tradax Green Energy moved to dismiss the Trustee's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Motion to Dismiss argues that the Trustee failed to state a claim for anticipatory breach of contract against Huybregts, for anticipatory breach of contract against Tradax Green Energy, and for breach of contract against Tradax Green Energy.  Alternatively, Huybregts and Tradax Green Energy moved for a more

definite statement of the Trustee's claims related to the Tradax Green Energy transfers under Federal Rule of Civil Procedure 12(e).

Defendants' Motion to Dismiss the Trustee's Second Amended Complaint and Rule 12(e) Motion for a More Definite Statement are denied.

## Background

Formed on April 5, 2000, Debtor is a Texas corporation operating as a purchaser and seller of petrochemical and renewable fuel products both domestically and abroad. (ECF No. 50 at 3). Huybregts allegedly controlled the Debtor during its entire existence as its president, sole officer, and shareholder. (ECF No. 50 at 3).

The Huybregts Family Trust is a trust held in the Commonwealth of the Bahamas. (ECF No. 50 at 3). Huybregts created the Trust via a Deed of Trust dated August 4, 1999, and has been its grantor, settlor, owner, and controller since its inception on August 4, 1999. (ECF No. 50 at 3). Through these roles, Huybregts holds the power to revoke the Family Trust or return the corpus to himself. (ECF No. 50 at 3). Consequently, the Debtor alleges that Huybregts is in total control of the Trust and receives all direct and indirect benefits from the Trust. (ECF No. 50 at 3).

The Debtor's business dealings required it to maintain a substantial amount of capital in order to fulfill its purchase and sale obligations. (ECF No. 50 at 3). The Trustee alleges that Huybregts failed to provide the Debtor with such needed capital, when necessary, from his personal funds. (ECF No. 50 at 3–4). Instead, Huybregts used the Family Trust: to initially undercapitalize the Debtor through a series of ten debt instruments—known as the HFT Loans—through which the Trust loaned the Debtor funds totaling $1.145 million between 2000 and 2005 in exchange for interest payments; to pay $738,054.73 of its funds between May 2004 and

January 2013 for Huybregts' personal benefit as interest payments on the HFT Loans; and to fraudulently transfer $780,603.00 from the Family Trust to Huybregts within two months of the Debtor's bankruptcy filing. (ECF No. 50 at 3–4). The Debtor defaulted on these loans and failed to pay any interest on 94% of the monthly interest due dates. (ECF No. 50 at 4).

The Trustee alleges that multiple other factors contributed to the undercapitalization of the Debtor, including: $2,311,560.80 of insider-mandated loans from the Debtor for the benefit of Huybregts; $1,221,339.43 of shareholder distributions to Huybregts, $490,781.01 of which was made while the Debtor was insolvent; $42,000.00 of additional advances to Huybregts; Huybregts' purported failure to repay most of these distributions; the Debtors' capital requirements; the capital requirements of the Debtor's various lenders, which restrict the Debtor's access to cash; the Debtor's loss of ING Bank as a source of capital; the Debtor's failure to perform on its contracts; the nature of the Debtor's business in connection with events within the petrochemical and renewable fuel products industry; and pending litigation against the Debtor. (ECF No. 50 at 4).

A series of alleged insider loans directed from the Debtor by Huybregts from April 2005 to December 2010 for his benefit also exacerbated the Debtor's undercapitalization, including: $175,208.65 at zero percent interest; $200,726.54 at zero percent interest; $166,193.47 at zero percent interest; $234,287.98 at zero percent interest; $29,809.14 at zero percent interest; and $237,015.46 at zero percent interest. (ECF No. 50 at 5). These purported insider loans totaled $1,166,840.70 to the benefit of Huybregts. (ECF No. 50 at 5). According to the Debtor's Controller and 2011 Audited Financial Statements, three of these insider loans were repaid in full, one was paid down, and three were reduced to $0.00 from an offset of related notes. (ECF

No. 50 at 5). The Debtor operated at a loss when many of these loans were made to Huybregts. (ECF No. 50 at 5).

Huybregts also allegedly directed the Debtor to make another series of insider loans to him totaling $582,335.00 from April to December 2009 in order to purchase a second home in the Hamptons. (ECF No. 50 at 5–6). The Debtor operated at a loss at the time the Hamptons Home Loan was made. (ECF No. 50 at 6). Huybregts made one payment of $1,755.06 to the Debtor to reduce the Hamptons Home Loan balance, and agreed to repay the remaining balance he owed at zero percent interest. (ECF No. 50 at 6). However, Huybregts purportedly failed to repay the Loan off in full; instead, the Loan balance was reduced to $438,181.00 as a result of an offset of related party notes payable in the Debtor's financial statements and general ledger for the period ending December 31, 2011, and the balance of the Loan was reflected as a shareholder distribution as of December 31, 2013. (ECF No. 50 at 6). Sometime between April and December 2014, Huybregts allegedly told the Debtor's former controller that he planned to make no further payments on the Loan. (ECF No. 50 at 10). The Debtor was insolvent on the day of this shareholder distribution. (ECF No. 50 at 6).

The Debtor allegedly made additional insider payments to Huybregts in March 2011. (ECF No. 50 at 9). Huybregts also purportedly directed the Debtor to make another shareholder distribution to him of $52,600.01 on December 19, 2013. (ECF No. 50 at 9).

Huybregts formed Tradax Green Energy on March 25, 2009. (ECF No. 50 at 6). Huybregts is listed as the sole manager, the sole director, a majority member, a governing person, and the registered agent of Tradax Green Energy in the records of the Texas Secretary of State. (ECF No. 50 at 6). Tradax Green Energy was a renewable energy company with a presence in biodiesel, RINS, solar credits, and carbon dioxide credits. (ECF No. 50 at 6). The

Texas Secretary of State's office states that Tradax Green Energy voluntarily dissolved on May 11, 2015. (ECF No. 50 at 6).

On April 14, 2009, Huybregts allegedly directed the Debtor to enter into a loan with Tradax Green Energy for $100,000.00 with interest at 6% per annum. Purportedly, Huybregts subsequently directed the Debtor to enter into a series of loan agreements with Tradax Green Energy from July 2009 to December 2013, and to advance money to Tradax Green Energy for its start-up expenses from April 2009 to January 2011. (ECF No. 50 at 6–9). Neither Huybregts nor Tradax Green Energy repaid the Debtor for these loans. (ECF No. 50 at 9). Huybregts instead wrote-off these unpaid loans as bad debt as of December 31, 2013, and took 100% of the bad debt deduction on his amended 2013 personal tax return. (ECF No. 50 at 9). Sometime between April and December 2014, Huybregts allegedly told the Debtor's former controller that he planned to make no further payments on the loans to Tradax Green Energy. (ECF No. 50 at 10). The Debtor was insolvent and operated at loss at the time these loans and advances were consummated. (ECF No. 50 at 9).

The Notes Receivable line on the Debtor's balance sheet reflects monies taken out of the Debtor by Huybregts, credit card charges made by Huybregts on the Debtor's credit cards, reverse entries for non-cash payments, reclassifications of non-cash payments to shareholder notes, and payments for Huybregts' personal items, such as property taxes, his child's tuition, meals, travel expenses, and other living expenses. (ECF No. 50 at 9). This Notes Receivable line shows that Huybregts owed the Debtor $88,149.47 as of April 29, 2015. (ECF No. 50 at 9). This debt accrued between December 6, 2013, and April 29, 2015, all within two years of the Debtor's bankruptcy filing. (ECF No. 50 at 10).

The Debtor filed for chapter 7 bankruptcy on June 29, 2015. (Case No. 15-33422). The Trustee was appointed on or about the date of the Debtor's bankruptcy filing. (ECF No. 50 at 2). After the 11 U.S.C. § 341 meeting of the creditors on August 6, 2015, the Debtor's bankruptcy case was classified as a "potential asset" case. (ECF No. 50 at 2). On or about August 25, 2016, the Trustee discovered that the Texas Comptroller of Public Accounts was holding $369,495.00 of unclaimed funds in the Debtor's name. (ECF No. 50 at 2). On the following day, the Trustee submitted a Texas Unclaimed Property Business Owner Claim Form to the Texas Comptroller of Public Accounts to recover these unclaimed funds for the Debtor's bankruptcy estate; the Debtor received these funds on September 20, 2016. (ECF No. 50 at 2). On that same date, the Trustee also filed a notice of assets with the Court that provided all of the Debtor's creditors with notice of the newly discovered assets and set a deadline of December 27, 2016, to file claims against the Debtor's estate. (ECF No. 50 at 2; Case No. 15-33422, ECF No. 10). The Trustee later retained counsel to determine whether there were any additional assets of the Debtor's estate, including claims against third parties. (ECF No. 50 at 2; Case No. 15-33422, ECF No. 18).

On December 27, 2016, the Trustee filed this adversary proceeding against Huybregts, Tradax Green Energy, and The Huybregts Family Trust. (ECF No. 1). Ultimately, the Trustee brought eight separate claims against the defendants as part of its Second Amended Complaint, including:

- Count I: a claim for an anticipatory breach of contract of the Hamptons Home Loan by Huybregts;

- Count II: a claim for an anticipatory breach of contract by Tradax Green Energy on the underlying promissory notes for the loans and advances it received from the Debtor;

- Count III: a breach of contract claim by Tradax Green Energy on the promissory notes for the loans and advances it received from the Debtor;

- Count IV: a claim for actual fraudulent transfers under § 24.005(a)(1) of the Texas Business & Commerce Code pursuant to 11 U.S.C. § 544(b)(1) made from the Debtor to or for the benefit of the Defendants;

- Count V: a claim for breach of fiduciary duty by Huybregts as the sole officer, director, and shareholder of the Debtor;

- Count VI: a claim for constructive fraudulent transfers under § 24.005(a)(2) of the Texas Business & Commerce Code pursuant to 11 U.S.C. §§ 544(b) and 550 directed from the Debtor by Huybregts for his benefit;

- Count VII: a claim for constructive fraudulent transfers under 11 U.S.C. §§ 548 and 550 directed from the Debtor by Huybregts; and

- Count VIII: a claim for unlawful shareholder distributions under Texas Business Organizations Code, Chapter 21.303 directed from the Debtor by Huybregts to himself. (ECF No. 50 at 11–17).

Huybregts and Tradax Green Energy responded to the Trustee's claims against them by filing a Rule 12(b)(6) Motion to Dismiss on September 5, 2017. (ECF No. 53). In their Motion, Huybregts and Tradax Green Energy specifically moved to dismiss Counts I, II, and III of the Trustee's Second Amended Complaint. (ECF No. 53 at 3–6). Alternatively, Huybregts and Tradax Green Energy moved for a more definite statement of the Trustee's claims under Federal Rule of Civil Procedure 12(e) if the Court denies any part of their Motion to Dismiss. (ECF No. 53 at 6).

On September 19, 2017, the Trustee filed a response to Huybregts and Tradax Green Energy's Motion to Dismiss and Motion for a More Definite Statement. (ECF No. 56). As part of her response, the Trustee agreed to dismiss Count II of her Second Amended Complaint. (ECF No. 56 at 5).

## Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O). This adversary

proceeding has been referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a).

## Legal Standard

The Court reviews motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Federal Rule of Civil Procedure 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In *Ashcroft v. Iqbal,* the United States Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotations omitted).

## Analysis

### *Count I: Anticipatory Breach of Contract by Huybregts*

A claim for anticipatory breach of contract consists of three elements: (i) an absolute repudiation of a contractual obligation by the repudiating party; (ii) the lack of a just excuse for

the repudiation; and (iii) damage to the non-repudiating party. *Enis v. Bank of Am., N.A.*, 2012 WL 4741073, at *4 (N.D. Tex. Oct. 3, 2012). In order to absolutely repudiate, the repudiating party must, "through words or actions, declare an unconditional intent not to perform" the contract at issue according to its terms. *Id.*

The Trustee argues in Count I of its Second Amended Complaint that Huybregts' December 31, 2013 reclassification of the unpaid balance on the Hampton Home Loan to a shareholder distribution, as well his 2014 statement that he planned to make no further payments on the Loan, qualified as an absolute repudiation of his contractual obligation to pay off the Loan. (ECF No. 50 at 11). Additionally, the Trustee claims that Huybregts lacks a just excuse for his anticipatory repudiation of the Loan. (ECF No. 50 at 11). Because of Huybregts' alleged anticipatory repudiation, the Trustee argues that the Debtor suffered $438,181.00 in damages.

In opposition to the Trustee's Count I, Huybregts and Tradax Green Energy argue in their Motion to Dismiss that no anticipatory repudiation took place because: the reclassification of the Loan was an action by the Debtor on the suggestion of its accountant; and Huybregts' 2014 statement occurred after the Loan had been reclassified by the Debtor as a shareholder distribution, extinguishing Huybregts' obligations on the Loan. (ECF No. 53 at 3–4). Because these acts of repudiation were attributable to the Debtor and occurred after Huybregts' contractual obligation ended, Huybregts and Tradax argue that Count I of the Trustee's Second Amended Complaint should be dismissed.

When assumed to be true, the factual allegations in Count I of the Trustee's Second Amended Complaint state a plausible claim for anticipatory breach of the Hampton Home Loan by Huybregts. First, the allegations that Huybregts—in his individual capacity—completely controlled the Debtor during all relevant times and actions to this claim effectively illustrate that

the Debtor's 2013 reclassification of the Hampton Home Loan balance was an act of Huybregts, not just the Debtor. Second, Huybregts' control of the Debtor at the time of the reclassification rebuts Huybregts' excuse that the Debtor performed the act of repudiation. Third, the Trustee asserts a plausible and unchallenged claim for damages from the anticipatory breach caused by the Loan reclassification. Accordingly, Count I of the Trustee's Second Amended Claim states a plausible claim for relief and Huybregts' and Tradax Green Energy's Motion to Dismiss Count I is denied.

***Count III: Breach of Contract by Tradax Green Energy***

A breach of contract claim under Texas law requires: (i) the existence of a valid contract; (ii) performance or tendered performance under the contract by the plaintiff; (iii) a breach of the contract by the defendant; and (iv) damages sustained by the plaintiff as a result of the defendant's breach of the contract. *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.). A breach of a contract occurs when a party fails to perform a duty required by the contract. *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App.—Dallas 1992, writ denied).

The Trustee asserts in Count III of her Second Amended Complaint that the loan agreements the Debtor entered into with Tradax Green Energy constituted valid contracts. (ECF No. 50 at 13). The Debtor performed under the contracts by loaning Tradax Green Energy a total of $564,140.00. (ECF No. 50 at 13). Tradax Green Energy allegedly breached the contracts by writing the loans off as bad debt. (ECF No. 50 at 13). Additionally, Tradax Green Energy breached the contract by failing to make any payments on the loans after their maturity date—December 15, 2015—passed. (ECF No. 50 at 13). Consequently, the Debtor sustained damages in the amount of the remaining loan balance. (ECF No. 50 at 13).

Huybregts and Tradax Green Energy argue in their Motion to Dismiss that Count III fails because the Debtor, not Tradax Green Energy, wrote off the loans. (ECF No. 53 at 5–6). Additionally, Tradax Green Energy could not have breached the contracts on their maturity date because it no longer held an obligation under the contracts because of the Debtor's write-off. (ECF No. 53 at 6). The Trustee's Count III thus did not allege sufficient facts to support a claim for breach of contract against Tradax Green Energy under the loan agreements.

When assumed to be true, the factual allegations in Count III of the Trustee's Second Amended Complaint state a plausible claim for relief. While Tradax Green Energy did not play a role in the write-off of its loan balances, Count III includes factual allegations that adequately assert that Tradax Green Energy breached the loan agreements by failing to pay the remaining loan balances by their maturity date. The Debtor did write-off the remaining loan balance; however, writing off a debt "does not constitute a legally effective discharge or release of the indebtedness . . . ." *Long v. Turner*, 134 F.3d 312, 317–18 (5th Cir. 1998). Tradax Green Energy's obligation to pay off its loan balances thus was not extinguished by the Debtor's write-off. Because Tradax Green Energy remained obligated to pay the remaining loan balances by their maturity date, its failure to make such payments injured the Debtor. Accordingly, Count III of the Trustee's Second Amended Claim states a plausible claim for relief and Huybregts' and Tradax Green Energy's motion to dismiss Count III is denied.

**Rule 12(e) Motion for a More Definite Statement**

The suggestion that the complaint requires a more definite statement is palpably incorrect. The Court has reviewed the complaint and it is more than adequate for full understanding and analysis. Huybregts' and Tradax Green Energy's Motion for a More Definite Statement is denied.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **November 9, 2017.**

　　　　　　　　　　　　　　　　　　Marvin Isgur
　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE