

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
01/30/2018

| | | |
|---|---|---|
| **IN RE:** | § | |
| **TRADAX ENERGY, INC.** | § | **CASE NO: 15-33422** |
| **Debtor(s)** | § | |
| | § | **CHAPTER 7** |
| | § | |
| **ALLISON D BYMAN** | § | |
| **Plaintiff(s)** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 16-3284** |
| | § | |
| **WALTER  HUYBREGTS,** *et al* | § | |
| **Defendant(s)** | § | |

## <u>MEMORANDUM OPINION</u>

Allison D. Byman, as Chapter 7 Trustee for Tradax Energy, Inc. (the "Debtor"), filed this adversary proceeding against Walter Huybregts, Tradax Green Energy, LLC, and The Huybregts Family Trust to recover damages for traditional and anticipatory breaches of multiple contracts and to obtain pre-judgment interest, post-judgment interest, and attorney's fees and costs, amongst other claims.

The Trustee moved for partial summary judgment on Counts I and III of her Second Amended Complaint, arguing that no material issues of fact exist as to Huybregts' anticipatory breach of the Hampton Home Loan and Tradax Green Energy's breach of the Tradax Green Energy Loan.  Huybregts and Tradax Green Energy oppose the Trustee's motions, asserting that genuine disputes of fact do exist as to whether Huybregts absolutely repudiated the Hampton Home Loan, whether Huybregts had a just excuse for not paying the Hampton Home Loan, whether the Debtor waived collection of the Hampton Home Loan, whether Tradax Green Energy breached the Tradax Green Energy Loan, and whether the Debtor waived collection of the Tradax Green Energy Loan.

The Trustee's motions for partial summary judgment are granted.

## Background

Formed on April 5, 2000, Tradax Energy, Inc.—the Debtor—is a Texas corporation that operated as a purchaser and seller of petrochemical and renewable fuel products both domestically and abroad. (ECF No. 50 at 3). Huybregts allegedly controlled the Debtor during its entire existence as its president, sole officer, and shareholder. (ECF No. 50 at 3).

Huybregts executed a December 31, 2009 promissory note in favor of the Debtor. (ECF No. 65-1 at 2). This note was for $580,579.94. (ECF No. 65-1 at 2). Huybregts executed this note, known as the "Hampton Home Loan," in order to purchase a second home in the Hamptons. (ECF No. 65 at 2; ECF No. 65-1 at 17). The Hampton Home Loan bore no interest and was payable by Huybregts to the Debtor on December 31, 2019. (ECF No. 65 at 2; ECF No. 65-1 at 7). The Debtor booked and carried the Hampton Home Loan as a legitimate note receivable on all of its audited financial statements from inception of the receivable to the last audited financial statement for the year ending December 31, 2013. (ECF No. 65 at 2; ECF No. 65-1 at 16; ECF No. 65-3 at 4, 13). Creditors never received notice of the Hampton Home Loan. (ECF No. 65 at 2; ECF No. 65-1 at 12). The Debtor operated at a loss at the time the Hamptons Home Loan was made. (ECF No. 50 at 6).

Huybregts did not repay the Hampton Home Loan off in full; instead, the Loan balance was reduced to $438,181.00. The reduction was made by the Debtor's controller, Chris Broussard, in order to (i) offset amounts owed by the Debtor to Huybregts as of December 31, 2011; and (ii) to reflect certain repayments made by Huybregts. (ECF No. 50 at 6; ECF No. 65 at 2–3; ECF No. 65-1 at 15).

Unaware of any offset or payments made by Huybregts on the Hampton Home Loan, the Debtor's tax accountant, Jon Meadows, testified that he made a recommendation to Huybregts and Broussard that the Hampton Home Loan be classified as a shareholder distribution for tax purposes as of December 31, 2013.  (ECF No. 65 at 3; ECF No. 65-2 at 3–5).  Meadows made this recommendation after Broussard purportedly informed him that Huybregts planned to not repay the remaining balance on the Loan.  This statement was reportedly made in October or November of 2014.  (ECF No. 65-2 at 4).  Huybregts disputes this allegation.  (ECF No. 81 at 4; ECF No. 81-1 at 2–3).

On November 14, 2014, Broussard made an entry on the Debtor's general ledger retroactively reclassifying the Hampton Home Loan to a shareholder distribution for the period ending December 31, 2013.  (ECF No. 65 at 4; ECF No. 65-2 at 10).  The Debtor was insolvent on the date of this shareholder distribution.  (ECF No. 50 at 6).  Meadows testified that, had he known about the Hampton Home Loan payments and offset, he never would have made the reclassification recommendation because such actions evidenced an intention by Huybregts to repay the Hampton Home Loan.  (ECF No. 65 at 4; ECF No. 65-2 at 6–7).  Prior to the reclassification of the Loan, Broussard and the Debtor's auditors considered the Loan to be legitimate and expected Huybregts to repay the Loan by its maturity date.  (ECF No. 65 at 3; ECF No. 65-1 at 11–12).

Huybregts formed Tradax Green Energy on March 25, 2009.  (ECF No. 50 at 6).  Huybregts is listed as the sole manager, the sole director, a majority member, a governing person, and the registered agent of Tradax Green Energy in the records of the Texas Secretary of State.  (ECF No. 50 at 6).  Tradax Green Energy was a renewable energy company with a

presence in biodiesel, RINS[1], solar credits, and carbon dioxide credits.  (ECF No. 50 at 6).  The Texas Secretary of State's office states that Tradax Green Energy voluntarily dissolved on May 11, 2015.  (ECF No. 50 at 6).

Through a series of loans dated between April 14, 2009, to December 16, 2013 (the "TGE Loan"), Tradax Green Energy borrowed $564,140.00 from the Debtor.  (ECF No. 73 at 2; ECF No. 73-1 at 5–23).  Interest on the TGE Loan started at 6% per annum with a maturity date of December 31, 2015.  (ECF No. 73-1 at 5, 23).  The Debtor was insolvent and operated at a loss at the time the TGE Loan was consummated.  (ECF No. 50 at 9).  Tradax Green Energy failed to repay the balance of the TGE Loan to the Debtor.  (ECF No. 73 at 2; ECF No. 73-1 at 31).  Ultimately, the Debtor wrote-off the remaining balance of the TGE Loan as bad debt.  (ECF No. 57 at 11).

The Debtor filed for chapter 7 bankruptcy on June 29, 2015.  (Case No. 15-33422).  The Trustee was appointed on or about the date of the Debtor's bankruptcy filing.  (ECF No. 50 at 2).  After the 11 U.S.C. § 341 meeting of the creditors on August 6, 2015, the Debtor's bankruptcy case was classified as a "potential asset" case.  (ECF No. 50 at 2).  On or about August 25, 2016, the Trustee discovered that the Texas Comptroller of Public Accounts was holding $369,495.00 of unclaimed funds in the Debtor's name.  (ECF No. 50 at 2).  On the following day, the Trustee submitted a Texas Unclaimed Property Business Owner Claim Form to the Texas Comptroller of Public Accounts to recover these unclaimed funds for the Debtor's bankruptcy estate; the Trustee received these funds on September 20, 2016.  (ECF No. 50 at 2).  On that same date, the Trustee also filed a notice of assets with the Court that provided all of the Debtor's creditors with notice of the newly discovered assets and set a deadline of December 27, 2016, to file claims against

---

[1] The Court understands that RINS are Renewable identification numbers.  RINS are credits used to comply with the EPA's Renewable Fuel Standards program.

the Debtor's estate. (ECF No. 50 at 2; Case No. 15-33422, ECF No. 10). The Trustee later retained counsel to determine whether there were any additional assets of the Debtor's estate, including claims against third parties. (ECF No. 50 at 2; Case No. 15-33422, ECF No. 18).

On December 27, 2016, the Trustee filed this adversary proceeding against Huybregts, Tradax Green Energy, and The Huybregts Family Trust. (ECF No. 1). Ultimately, the Trustee brought eight separate claims against the defendants as part of her Second Amended Complaint, including:

- Count I: a claim for an anticipatory breach of the Hampton Home Loan by Huybregts;

- Count II: a claim for an anticipatory breach of the TGE Loan by Tradax Green Energy;

- Count III: a claim for a breach of the TGE Loan by Tradax Green Energy;

- Count IV: a claim under § 24.005(a)(1) of the Texas Business & Commerce Code and pursuant to 11 U.S.C. § 544(b)(1) for actual fraudulent transfers made from the Debtor to or for the benefit of the defendants;

- Count V: a claim for breach of fiduciary duty by Huybregts as the sole officer, director, and shareholder of the Debtor;

- Count VI: a claim under § 24.005(a)(2) of the Texas Business & Commerce Code and pursuant to 11 U.S.C. §§ 544(b) and 550 for constructive fraudulent transfers directed from the Debtor by Huybregts for his benefit;

- Count VII: a claim under 11 U.S.C. §§ 548 and 550 for constructive fraudulent transfers directed from the Debtor by Huybregts; and

- Count VIII: a claim under Texas Business Organizations Code, Chapter 21.303 for unlawful shareholder distributions directed from the Debtor by Huybregts to himself.  (ECF No. 50 at 11–17).

Huybregts and Tradax Green Energy responded to the Trustee's claims against them by filing a Rule 12(b)(6) motion to dismiss on September 5, 2017.  (ECF No. 53).  In their motion, Huybregts and Tradax Green Energy specifically moved to dismiss Counts I, II, and III of the Trustee's Second Amended Complaint.  (ECF No. 53 at 3–6).  On September 19, 2017, the Trustee filed a response to the motion to dismiss.  (ECF No. 56).  As part of her response, the Trustee agreed to dismiss Count II of her Second Amended Complaint.  (ECF No. 56 at 5).  Ultimately, the Court denied Huybregts and Tradax Green Energy's motion to dismiss.  (ECF No. 58).

On December 7, 2017, the Trustee filed a motion for partial summary judgment on Count I of her Second Amended Complaint, arguing that Huybregts explicitly repudiated his contractual obligations under the Hampton Home Loan, had no just excuse for his repudiation, and caused the Debtor to suffer damages.  (ECF No. 65 at 5–12).

The Trustee filed a second motion for partial summary judgment on Count III of her Second Amended Complaint on December 21, 2017.  (ECF No. 73).  The Trustee argues that after the Debtor transferred the TGE Loan proceeds, Tradax Green Energy breached the Loan by failing to make any payments by the Loan's maturity date.  (ECF No. 73 at 3).  This failure, unexcused by the Debtor's write-off of the loan as bad debt, caused damage to the Debtor.  (ECF No. 73 at 3–4).

On January 4, 2018, the Trustee stipulated to the withdrawal of Counts IV, VI, and VII of the Second Amended Complaint.  (ECF No. 78).

Huybregts and Tradax Green Energy filed responses to the Trustee's motions for partial summary judgment on January 11, 2018. (ECF No. 81; ECF No. 82). In response to the Trustee's motion for partial summary judgment on Count I, Huybregts and Tradax Green Energy assert that the Trustee failed to prove that she is entitled to summary judgment as a matter of law because she submitted no evidence proving that Huybregts explicitly repudiated his Loan obligations, that Huybregts had a just excuse for repudiating because he did so after the reclassification of the Loan, and the Debtor waived the Loan—and thus Huybregts' Loan obligations by reclassifying it. (ECF No. 81 at 3–5).

In response to the Trustee's motion for partial summary judgment on Count III, Huybregts and Tradax Green Energy assert that the Trustee failed to prove all elements of her breach of contract claim against Tradax Green Energy because the Debtor waived the TGE Loan and Tradax Green Energy's Loan obligations by failing to collect on the TGE Loan and by writing off the amounts due from Tradax Green Energy. (ECF No. 82 at 3–4).

On January 19, 2018, the Court took the Trustee's motions for partial summary judgment under advisement.

## Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This adversary proceeding has been referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a).

## Analysis

### *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings. A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need

consider only the cited materials, but it may consider other materials in the record.  FED. R. CIV. P. 56(c)(3).  The Court should not weigh the evidence.  *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016).  A credibility determination may not be part of the summary judgment analysis.  *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).  However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  FED. R. CIV. P. 56(c)(2).  Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 326 (1986).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof on an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 325. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Id.* at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

### *Count I: Anticipatory Breach of the Hampton Home Loan*

The Trustee moves for summary judgment on Count I of her Second Amended Complaint, her claim for an anticipatory breach of the Hampton Home Loan by Huybregts based upon his express refusal to repay the remaining Loan balance. This motion is granted.

An anticipatory breach of contract claim under Texas law requires proof of: (i) an absolute repudiation of a contractual obligation; (ii) a lack of a just excuse for the repudiation; and (iii) damage to the non-repudiating party. *Enis v. Bank of Am., N.A.*, 2012 WL 4741073, at *4 (N.D. Tex. Oct. 3, 2012). "To absolutely repudiate, a party must, through words or actions, declare an unconditional intent not to perform the contract according to its terms." *Id.*

*Absolute Repudiation*

The Trustee claims that Huybregts absolutely repudiated the Hampton Home Loan when he told Broussard that he planned to make no further payments on the Loan sometime in 2014. (ECF No. 65 at 3; ECF No. 65-1 at 28; 65-2 at 4). The Trustee additionally cites to the testimony of Huybregts during his June 23, 2017 deposition, in which he stated that he does not "think" he will repay the Loan by its maturity date. (ECF No. 65-2 at 16). Finally, Meadows stated during his deposition that he made his recommendation for recharacterization of the Loan

only after being informed by Broussard sometime in 2014 that Huybregts would not repay the Loan.  (ECF No. 65-2 at 3–4).

Huybregts disputes any such repudiation; instead, Huybregts cites to his own affidavit, in which he stated that he "did not inform the Debtor that [he] would not be repaying the Hampton Home Loan."  (ECF No. 81 at 4; ECF No. 81-1 at 3).  Based upon this statement, it appears that Huybregts adequately established a genuine dispute as to whether he absolutely repudiated his obligations under the Loan.  However, Huybregts also stated within his affidavit that "[o]nce the Debtor reclassified the Hampton Home Loan as a shareholder distribution . . . I too treated the Hampton Home Loan as a shareholder distribution that was not required to be repaid."  (ECF No. 81-1 at 3).  Together with his deposition testimony and the testimony of Meadows and Broussard, this statement overwhelmingly illustrates Huybregts' unconditional intent not to perform the contract according to its terms, regardless of whatever Huybregts claimed he did not initially tell Broussard of his intention.  No genuine dispute exists as to Huybregts' absolute repudiation of the Hampton Home Loan.

*Just Excuse and Waiver*

If found to have absolutely repudiated his contractual obligations under the Hampton Home Loan, Huybregts asserts that he is justly excused from his repudiation because his repudiation occurred after the Debtor's accountants recommended that the Debtor reclassify the Hampton Home Loan as a shareholder distribution.  (ECF No. 81-1 at 3).  Regardless of what Meadows states would have happened had he known about the Loan offset and repayments, the Debtor relied on Meadows' recommendation and recharacterized the Loan, which Huybregts claims led to his determination that he need not repay the Loan.  (ECF No. 81 at 5).

In the view of the Trustee, Huybregts' excuse is unjustifiable for multiple reasons.  The Trustee first cites to Huybregts' failure to mention Meadows' reclassification recommendation as an excuse within his June 23, 2017 deposition.  (ECF No. 65 at 5).  During that deposition, Huybregts excused his repayment of the Hampton Home Loan because the Loan had not yet reached maturity, the Debtor no longer exists, and no reason exists to now pay off the Loan.  (ECF No. 65-2 at 15–16).  Huybregts did not list the reclassification of the Loan as an excuse for his repudiation during his deposition.  (ECF No. 65-2 at 12–18).

Moreover, as set forth above, Meadows—the Debtor's tax accountant—testified that, had he known about the Hampton Home Loan offset and other repayments Huybregts made on the Loan, he would not have recommended reclassification of the Loan because such payments evidenced an intention by Huybregts to repay the Loan.  (ECF No. 65-2 at 6–7).

As seen from his deposition testimony, Meadows made his recommendation for recharacterization after being informed sometime earlier in 2014 that the Loan would not be repaid.  (ECF No. 65-2 at 3–4).  Consequently, Huybregts' excuse that his absolute repudiation came after reclassification is illogical: an absolute repudiation cannot create the just excuse that justifies said repudiation.

Huybregts' alleged "just excuse" is actually a circular, after-the-fact "unjust excuse".  Huybregts alleges that he did not initially tell Broussard that he would not repay the loan.  Accepting that allegation as true, the Debtor's reclassification of the Hampton Home Loan as a shareholder distribution was based on an error.  At all material times, the Debtor was controlled by Huybregts.  It cannot be a "just excuse" for an individual to rely on an alleged error made by a company that the individual controls.  Accordingly, no genuine dispute exists as to the fact that Huybregts lacked a just excuse for his repudiation of the Hampton Home Loan.

In a final attempt to escape liability for his anticipatory breach of the Hampton Home Loan, Huybregts asserts that there is a genuine dispute of fact and law as to whether the Debtor waived the Loan and released Huybregts from his Loan obligations. (ECF No. 81 at 5–6).   In support of his waiver defense, Huybregts argues that the Trustee submitted no evidence proving that the Debtor's decision to reclassify the Hampton Home Loan as a shareholder distribution was improper or revoked, that the Debtor made a demand on Huybregts for payment before or after the reclassification, or that the reclassification was anything other than an appropriate corporate act of the Debtor.  (ECF No. 81 at 5).  Based upon this lack of evidence, Huybregts argues that the Debtor waived the Hampton Home Loan and Huybregts' obligations under it.  (ECF No. 81 at 5).

Waiver is an affirmative defense against the waiving party.  *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 790–91 (Tex. App. 2016); *see Foots v. Andrepoint*, 2017 WL 124439, at *2 (Tex. App. Jan. 12, 2017).  The burden of proof for an affirmative defense rests on the party asserting the defense.  *Zorilla v. Ayco Constr. II, LLC*, 469 S.W.3d 143, 156 (Tex. 2015).  A successful claim for waiver requires proof of: (i) an existing right held by a party; (ii) the party's actual knowledge of that right's existence; and (iii) the party's actual intent to relinquish that right through an express renunciation, or the party's intentional conduct, such as a long period of inaction, inconsistent with keeping that right.  *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008); *see also Estate of Riefler*, 2017 WL 5778576, at *4 (Tex. App. Nov. 28, 2017).  For an implied waiver to be found, intent must be clearly demonstrated by the surrounding facts and circumstances.  *Enter. Prod. Partners, L.P. v. Energy Transfer Partners, L.P.*, 529 S.W.3d 531, 543 (Tex. App. 2017), *reh'g overruled* (Sept. 13, 2017).

Huybregts fails to carry the burden on his affirmative defense of waiver.  Huybregts has the burden of proving his affirmative defense of waiver; however, he submitted no evidence establishing any of the elements required under Texas law.  Instead, Huybregts improperly attempts to shift the burden of *his defense* to the Trustee by claiming that the Trustee failed to present adequate evidence proving that she did not waive the Hampton Home Loan.  The Court consequently rejects this affirmative defense.

*Damages*

As the final element of her anticipatory breach of contract claim, the Trustee must prove that the non-repudiating party—the Debtor or the Debtor's bankruptcy estate—were damaged by Huybregts' anticipatory breach of the Hampton Home Loan.  Huybregts clearly repudiated his Loan obligations.  After taking into account the Debtor's offset and all repayments made by Huybregts, an unpaid balance of $438,181.00 remained on the Hampton Home Loan as of November 14, 2014—the date that the Loan was retroactively reclassified as a shareholder distribution and that the Debtor lists as the repudiation date for purposes of calculating damages. (ECF No. 65 at 2–3).  This amount remains unpaid, damaging the Debtor's estate.  (ECF No. 65-1 at 28).   Because Huybregts stated that he would not make any more payments on this outstanding balance, the Court determines that no genuine dispute exists as to the fact that the Debtor and the Trustee were damaged by Huybregts' repudiation.

"When a party who is obligated to make future payments of money to another absolutely repudiates the obligation without just excuse, the obligee is entitled to maintain his action for damages at once for the entire breach, and is entitled in one suit to receive in damages the present value of the future payments payable to him by virtue of the contract." *Taylor Pub. Co. v. Sys. Mktg. Inc.*, 686 S.W.2d 213, 217 (Tex. App. 1984), *writ refused NRE* (May 8, 1985).

"Specific evidence of the present value discount rate is not required and the trial court may determine the present value of future damages." *Id.*

The remaining balance of $438,181.00 on the Hampton Home Loan is undisputed. (ECF No. 65 at 3). In order to determine the present value of this total as of the date of the Loan's repudiation, November 14, 2014, the Court applies today's federal judgment interest rate of 1.79% as the proper discount rate and uses December 31, 2019, as the maturity date for the Loan. (ECF No. 65 at 11). Applying these factors to the unpaid balance of the Loan, the Court determines the present value of the Trustee's damages as of the Loan's repudiation date to be $400,050.39. The Trustee's total damages include this $400,050.39 in addition to pre- and post-judgment interest from the date of repudiation to the date of entry of the judgment and attorney's fees and costs.[2]

### Count III: Breach of the TGE Loan

The Trustee additionally moves for summary judgment on Count III of her Second Amended Complaint, her claim for a breach of the TGE Loan by Tradax Green Energy based on its failure to make any payments on the Loan by its maturity date. This motion is granted.

Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001).

---

[2] The Court notes that the discount to present value might logically be to the date of judgment rather than to the date of repudiation. However, if pre-judgment interest is awarded at the federal judgment interest rate, then the mathematical result would be unchanged. For example, as of the date of entry of this Memorandum Opinion, the discounted present value from December 31, 2019, would be $423,502.03. Similarly, pre-judgment interest on $400,050.39 from November 14, 2014, through this date would be $23,451.65. $400,050.39 plus $23,451.65 equals $423,502.03. Because the results are identical, the Court need not resolve the appropriate method.

The Trustee argues in her motion for partial summary judgment on Count III that, after the Debtor transferred the TGE Loan proceeds, Tradax Green Energy breached the terms of the TGE Loan after failing to make any payments on the Loan by its maturity date. (ECF No. 73 at 3). Because it remained obligated to pay the remaining balance on the TGE Loan under Texas law even after the Debtor wrote-off of the loan as a bad debt, Tradax Green Energy's failure to pay the Loan by its maturity date injured the Debtor. (ECF No. 73 at 3). The Debtor ultimately sustained $564,140.00 in damages (the remaining balance on the TGE Loan) in addition to pre- and post-judgment interest, and attorney's fees and costs as a result of Tradax Green Energy's breach. (ECF No. 73 at 3).

The Trustee submitted undisputed and sufficient evidence establishing all elements of her breach of contract claim. Specifically, the TGE Loan was a valid contract with Tradax Green Energy's obligations expected to be paid by the Loan's maturity date of December 31, 2015. (ECF No. 73-1 at 32–33). The Debtor fulfilled its obligation under the loan by transferring the total amount of $564,140.00 to Tradax Green Energy. (ECF No. 73-1 at 5–23). Tradax Green Energy subsequently failed to make any payments on the Loan's balance. (ECF No. 73-1 at 31). Consequently, the Debtor experienced damages in the amount of the loan's balance—$564,140.00—plus pre- and post-judgment interest and attorney's fees and costs. (ECF No. 73-1 at 5–23; *see also* ECF No. 73 at 3).

The Debtor's write-off of the TGE Loan does not relieve Tradax Green Energy of its obligation to pay Loan's remaining balance because Tradax Green Energy remained obligated to pay the remaining TGE Loan balance by the maturity date, regardless of whether the Debtor wrote the Loan off as bad debt. Under Texas law, a write-off is a mere accounting practice used to reduce the value of an asset as shown on a balance sheet to zero. *Long v. Turner*, 134 F.3d

312, 317 (5th Cir. 1998).  A debt that has been written off may still be recovered and written back on the books.  *Id.*  "Thus, writing off a bad debt . . . does not constitute a legally effective discharge or release of the indebtedness and it does not imply that the creditor intends to thereby legally divest himself of ownership of the debt or to legally preclude any further efforts to collect."  *Id.* at 317–18.  Following from this precedent, the Debtor's act of writing-off of the TGE Loan could not constitute a waiver of its legal right to collect the remaining Loan balance from Tradax Green Energy.

In opposition to the Trustee's motion, Tradax Green Energy argues that the Debtor and the Trustee waived the TGE Loan and Tradax Green Energy's Loan obligations.  (ECF No. 82 at 3–4).  Specifically, Tradax Green Energy asserts that the Trustee presented no evidence that the Debtor ever collected on the TGE Loan; instead, the Debtor entered into multiple amendments extending the Loan's maturity date and eliminating interest.  (ECF No. 82 at 3).  Tradax argues that these actions make it clear that the Debtor intended to waive the TGE Loan.  (ECF No. 82 at 4).

Evaluating the elements of a Texas waiver claim listed above, Tradax Green Energy fails to carry the burden for its affirmative defense of waiver.  Just as with Count I, Tradax Green Energy submitted no evidence establishing any of the elements of a waiver claim under Texas law.  Instead, Tradax Green Energy again improperly attempts to shift the burden of its defense to the Trustee by claiming that the Trustee did not present adequate evidence proving that she did not waive the TGE Loan.  For the reasons described above, this argument also fails.  Even if the burden were on the Trustee, the deposition testimony of Broussard proves that the Debtor did attempt to collect on the TGE Loan; this is the opposite of waiver.  (ECF No. 73-1 at 31).

Without any conflicting evidence or valid defense on behalf of Tradax Green Energy, no genuine dispute exists as to the fact that Tradax Green Energy breached the TGE Loan.

### Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **January 29, 2018.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE